# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAREEM MILLHOUSE, | : | |
|     Petitioner, | : | |
| | : | CIVIL ACTION NO. 1:18-CV-2444 |
| v. | : | |
| | : | **Judge Sylvia H. Rambo** |
| DAVID J. EBBERT, | : | |
|     Respondent. | : | |

## **MEMORANDUM**

On December 28, 2018, Petitioner Kareem Millhouse ("Millhouse"), a prisoner confined at the Lewisburg United States Penitentiary, Lewisburg, Pennsylvania, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. No. 1.) Millhouse challenges the decision of a Disciplinary Hearing Officer ("DHO") that found him guilty of possession of a weapon. (*Id.*) On February 1, 2019, the Court granted Millhouse leave to proceed *in forma pauperis* and directed Respondent to show cause why Millhouse should not receive the relief he seeks. (Doc. No. 4.) Respondent filed a response to the § 2241 Petition on March 1, 2019 (Doc. No. 6), and Millhouse filed his traverse on March 11, 2019 (Doc. No. 7). Accordingly, this matter is ripe for disposition. For the following reasons, Millhouse's § 2241 Petition will be denied.

## I. BACKGROUND

On February 27, 2018, Officer D. Morgan responded to a medical emergency in Housing Unit 5B, cell 112. (Doc. No. 6 Ex. 1, Attach. B. at 1.) After removing the inmate having medical issues, Morgan "began to search the cell in order to locate any drugs or paraphernalia that might have contributed to the medical emergency." (*Id.*) Morgan located a homemade weapon "inside a slit toward the middle of the mattress, facing the wall side of the bunk." (*Id.*) Morgan determined that the inmate involved in the medical emergency did not live in cell 112. (*Id.*) Instead, "Inmate Millhouse, Rodney Reg. No. 59904-066 was the sole occupant of cell 112." (*Id.*)

Based on these events, Millhouse was issued Incident Report Number 3093733, charging him with a violation of Code 104, possession of a weapon. (*Id.*) A copy of the Incident Report was delivered to Millhouse on March 1, 2018, and he was advised of his right to remain silent throughout the disciplinary process. (*Id.* at 1-3.) The Incident Report noted that it had been suspended pending FBI referral, but that it was then released for processing on March 1, 2018. (*Id.* at 2.)

On March 2, 2018, Millhouse appeared before the Unit Discipline Committee ("UDC"), wherein he stated that he "want[ed] the camera reviewed." (*Id.* at 1.) The UDC referred the case to a DHO for disposition. (*Id.*) Millhouse signed an acknowledgment of his receipt of the Inmate Rights at Discipline Hearing Form and

2

Notice of Discipline Hearing before the DHO, and indicated that he neither wanted a staff representatives nor witnesses to appear on his behalf. (*Id.* at 3-4.)

On March 6, 2018, Millhouse appeared before the DHO, who advised him of his rights. (Doc. No. 6 Ex. 1, Attach. C at 1.) The DHO read section 11 of the Incident Report out loud, and Millhouse stated, "It wasn't mine. There was a guy put it in my cell which led to the emergency. I was assigned to cell. I got the mattress 2 weeks earlier." (*Id.*)

The DHO first noted that "there was a delay from the date and time staff became aware of the incident to the date of your UDC hearing." (*Id.* at 3.) The DHO indicated that this delay occurred because "[the] incident report was referred for prosecution." (*Id.*) The DHO "did not feel the delay adversely affected [Millhouse's] ability to defend [himself]." (*Id.*)

In response to Millhouse's request for camera surveillance video, the DHO noted that Lieutenant Root "reviewed the camera and the [cameras] were inconclusive" because they "[did] not show the inside of the cell." (*Id.*) The DHO considered Millhouse's statements, the incident report, the photograph of the weapon, and the chain of custody log. (*Id.* at 2-3.)

The DHO found the charge to be supported by the greater weight of the evidence and found that Millhouse had "possessed the weapon, constructively, in

3

[his] assigned cell." (*Id.* at 3.) He noted that Millhouse was the "sole occupant of the cell which gave [him] the most dominion and control over what was in it." (*Id.*) The DHO rejected Millhouse's claim that the inmate with the medical emergency possibly put the weapon there, stating that "the location the weapon was hidden does not seem reasonable . . . a location where someone in his condition would have the ability to hide a weapon, especially if he is not familiar with the cell." (*Id.*)

Millhouse was sanctioned with disallowance of forty-one (41) days of good conduct time, fourteen (14) days of disciplinary segregation, and three (3) months loss of commissary privileges. (*Id.* at 4.) The DHO's report was issued on March 27, 2018 and was delivered to Millhouse on April 3, 2018. (*Id.*) After exhausting his administrative remedies (Doc. No. 6 at 2 n.1), Millhouse filed the instant § 2241 Petition. In his § 2241 Petition, Millhouse argues that his due process rights were violated because: (1) he "didn't have 24 hour notice of [the] charge"; (2) he did not receive a copy of the incident report 24 hours after the incident occurred; (3) the DHO never reviewed the requested camera surveillance video; and (4) section two of the incident report was inaccurate, as it erroneously stated that Millhouse's first name is Rodney. (Doc. No. 1 at 7-8.)

## II. DISCUSSION

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. *Torres v. Fauver*, 292 F.3d 141 (3d Cir. 2002). It is well settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court has held that that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. *Id.* at 557. Because Millhouse's sanctions included the loss of good conduct time, he has identified a liberty interest.

In *Wolff*, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. *Wolff*, 418

U.S. at 563-67. The Supreme Court has held that the standard of review about the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445-46 (1985); *see also Griffin v. Spratt*, 969 F.2d 16, 19 (3d Cir.1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. *Hill*, 472 U.S. at 457. The *Hill* standard is minimal and does not require examination of the entire record, an independent analysis of the credibility of the witnesses, or even a weighing of the evidence. *See Thompson v. Owens*, 899 F.2d 500, 501-502 (3d Cir. 1989).

The Bureau of Prisons' ("BOP") inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq.*, and entitled, *Inmate Discipline and Special Housing Units*. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. *See Von Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to these regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. Under the regulations, an inmate "*ordinarly* receives[s] the incident report within 24 hours of staff becoming aware of . . . involvement in the incident." *Id.* § 541.5(a)

(emphasis added). The incident is then referred to the UDC for an initial review pursuant to § 541.7.

The UDC review/hearing is "ordinarily [held] within five work days after [the incident report] is issued" and does not include the initial day staff learns of the incident, weekends or holidays. *Id.* If the UDC finds that a prisoner has committed a prohibited act, it may impose any of the available sanctions set forth in 28 C.F.R. § 541.3 (Tables 1 and 2) except loss of good conduct time, disciplinary segregation, or monetary fine. *Id.* If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a DHO for a hearing. *Id.*

A DHO "will only conduct a hearing on the incident report if referred by the UDC." 28 C.F.R. § 541.8. An inmate will receive written notice of the charges 24 hours before the DHO hearing unless the inmate waives the notice requirement in which case the DHO can conduct the hearing sooner. *Id.* The inmate is permitted to have a staff representative at the hearing and entitled to make a statement and present documentary evidence. *Id.* After the hearing, the DHO will either: (1) find the inmate committed the prohibited act or similar one described in the incident report; (2) find the inmate did not commit the prohibited act charged; or (3) refer the incident report back for further investigation, review and disposition. *Id.* If an

7

inmate is found to have committed a prohibited act, the DHO can impose any of the available sanctions listed in Table 1 and 2 of § 541.3. *Id.* Finally, the written report or decision of the DHO will contain the following: (1) whether the inmate was advised of his or her rights during the proceedings; (2) the evidence relied on by the DHO; (3) the DHO's finding of guilt or innocence; (4) the sanctions imposed; and (5) the reasons for the sanctions imposed. *Id.*

### A. Millhouse Received His Due Process Rights

Contrary to Millhouse's arguments, he received his procedural due process rights under *Wolff* and the BOP regulations. While Millhouse did not receive a copy of the Incident Report within 24 hours of the incident, this is because the incident report had been referred for possible prosecution. (Doc. No. 6 Ex. 1, Attach. C at 3.) The record reflects, however, that Millhouse received the report on March 1, 2018, and the hearing before the DHO was held on March 6, 2018. (*Id.* at 1.) Millhouse chose not to have any witnesses testify on his behalf. (*Id.*) He chose to proceed without a staff representative. (*Id.*) While the DHO did not personally review the camera surveillance video, he noted Lieutenant Root's findings that the camera was inconclusive because it did not show the inside of the cell. (*Id.* at 3.) Finally, Millhouse received a copy of the written decision of the DHO, which

included the evidence relied upon and the rationale behind the disciplinary action, on April 3, 2018. (*Id.* at 4.)

As noted above, Millhouse argues that he did not receive due process because the Incident Report erroneously referred to his first name being Rodney. The Court concludes that this was a mere typographical error and notes that the inmate registration number cited within matches that assigned to Millhouse. Millhouse also suggests that he did not receive due process because he did not receive 24-hour notice of the charge the DHO actually found him guilty of. Millhouse states that he was charged with a violation of Code 104, but was found guilty of constructive possession, and that "there is no charge in BOP for constructive possession." (Doc. No. 7 at 2.) Millhouse's argument is misplaced. The DHO found him guilty of a violation of Code 104 based upon a theory of constructive possession. Thus, he was found guilty of the same violation with which he was charged.

For these reasons, the Court finds that Millhouse received all the due process procedures to which he was entitled.

### B. The DHO's Decision Was Based on Sufficient Evidence

With respect to the sufficiency of the evidence, Respondent has attached to his response the Incident Report, the DHO Report, and a copy of the photograph of

the weapon. (Doc. No. 8 Ex. 1, Attachs. A, B, C.) These documents unequivocally establish that there was some evidence supporting the DHO's decision.

In pertinent part, the DHO provided the following in his decision finding Millhouse guilty of a violation of Code 104, possession of a weapon:

> The DHO finds you committed the prohibited act of Code 104, possession of a weapon, while incarcerated at USP McCreary on February 27, 2018, at approximately 10:30 AM.
>
> The finding is based in part on the written statement of D. Morgan, who attests the following:
>
> At approximately 10:20 AM. On February 27, 2018, I responded to a medical emergency in Housing Unit 5B, Cell 112. After removing the inmate which was having medical issues, I began to search the cell in order to locate any drugs or paraphernalia that might have contributed to the medical emergency. At approximately 10:30 while searching cell 112, I located a homemade weapon made of gray metal, [a]pproximately 6 inches in length, having a brown cloth wrapped around one end as a handle, and sharpened to a point at the other. This weapon was located inside a slit toward the middle of the mattress, facing the wall side of the bunk. It should also be noted that the mattress had a sheet tied in knots at both ends, which had to be untied in order to make the slit in the mattress visible and the weapon retrievable. It was then identified that the inmate involved in the medical emergency did not live in cell 112, but that Inmate Millhouse, Rodney Reg. No. 59904-066 was the sole occupant of cell 112.
>
> . . .
>
> The DHO notes, Lieutenant Root reviewed the camera and the [cameras] were inconclusive. The DHO notes, that during your hearing, you denied possessing the weapon, by stating, "It wasn't mine. There was a guy put it in my cell which led to the emergency. I was assigned to cell. I got the mattress 2 weeks earlier." The DHO

10

considered your statements, the attestment of the reporting officer and the photograph of the weapon in deciding this issue. Specifically, Officer Morgan attests he discovered the weapon in your mattress during a random search. He states there was a medical emergency involving another inmate who was in your cell, which prompted the subsequent search of the cell and he then realized you were the sole occupant of the cell. He states the weapon was concealed inside the mattress.

I reviewed the photograph of the weapon and found it consistent with the description in section 11.

Evidence provided by your was your statement which you deny possessing or having knowledge of the weapon. You requested video footage be reviewed and Lt. Root reviewed the footage and found it was inconclusive because it does not show the inside of the cell.

Upon weighing the evidence, I find the greater weight of the above listed evidence supports you possessed the weapon, constructively, in your assigned cell. You denied possessing the weapon but the weapon was found inside the mattress in which you were the sole occupant. You claim the inmate in your cell which led to the medical emergency was possibly how the weapon got in your cell. The location the weapon was hidden does not seem reasonable to me a location where someone in his condition would have the ability to hide a weapon, especially if he is not familiar with the cell. The DHO cannot ignore the fact the weapon was discovered inside the mattress and was easily taken by hand, which is known amongst staff and inmates alike to be a common area to hide contraband, especially homemade weapon[s]. The officer did not use any special tools to discover the weapon. The DHO does not find it reasonable to believe you would be naïve enough not to check it for contraband and know it was there. For these reasons, the DHO can find no merit in your denial. The DHO finds you had the ability, and more than ample time, to have located and discarded the weapons if you had not wanted them to be in your possession. You are responsible for maintaining your cell free and clear of contraband. You were the sole occupant of the cell which gave you the most dominion and control over what was in it.

(Doc. No. 6 Ex. 1, Attach. C at 3-4.) Moreover, the DHO explained the imposed sanctions, including his judgment as to what was needed to deter Millhouse from engaging in similar behavior in the future. (*Id.* at 4.)

While not clear, Millhouse seems to contend that the evidence was insufficient to support the finding that he possessed a weapon. As noted above, the DHO found that Millhouse had constructively possessed the weapon. The United States Court of Appeals for the Third Circuit, however, has upheld the BOP's application of the constructive possession policy in the conduct of prison disciplinary proceedings. *See Denny v. Schultz*, 708 F.3d 140, 145-47 (3d Cir. 2013). Thus, the *Denny* decision forecloses Millhouse's argument that there was not "some evidence" to support the DHO's conclusion because the weapon was found in his cell, of which he was the sole occupant.[1]

## III. CONCLUSION

For the foregoing reasons, the Court concludes that Millhouse was accorded all of his due process rights under *Wolff* and the BOP regulations, and that there was

---

[1] Indeed, this Court previously rejected this same argument when Milhous raised it in a prior § 2241 petition. *See Milhouse v. Ebbert*, No. 1:16-CV-00618, 2016 WL 4179477, at *4 (M.D. Pa. Aug. 8, 2016), *aff'd by Milhouse v. Warden Lewisburg USP*, 700 F. App'x 158 (3d Cir. 2017) (per curiam).

some evidence supporting the DHO's decision. Accordingly, Millhouse's § 2241 Petition will be denied. An appropriate Order follows.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: March 26, 2019